1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8

9

10

11

12

13

14

| | | |
|---|---|---|
| CHRISTOPHER P. JERNIGAN, | ) | |
| Petitioner, | ) | 3:08-cv-0104-ECR-WGC |
| vs. | ) | |
| RENEE BAKER, *et. al.*, | ) | ORDER |
| Respondents. | ) | |

15

16

17

18

19

20

21

22

23

24

25

26

          This action is on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by
pro se petitioner Christopher Jernigan.  Before the Court is respondents' answer (ECF No. 30) and
petitioner's reply (ECF No. 34) along with a second motion for relief from the Court's Order of
October 22, 2009, (ECF No. 32).

**I. Procedural History**

          On August 3, 2001, Petitioner was charged by criminal complaint in the Justice Court
for Mina Township with murder with the use of a deadly weapon on a person sixty-five years of age
or older.  Exhibit 1.[1]  After a preliminary hearing, petitioner was charged in the Fifth Judicial Circuit
for Mineral County on October 5, 2001, with open murder with the use of a deadly weapon on a
person over the age of sixty-five.  Exhibits 4, 5, and 7.  Petitioner entered a plea of not guilty to the

---

          [1] The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in
support of their motion to dismiss, and are located in the record at ECF No. 13.

charge.  Exhibit 8.  After a jury trial, petitioner was convicted as charged.  Exhibits 27-32.  Petitioner was sentenced to two consecutive life sentences without the possibility of parole.  Exhibit 33.  A judgment of conviction was entered on January 8, 2003.  Exhibit 32.

Petitioner appealed, and the Nevada Supreme Court affirmed the conviction, but reversed for a new sentencing hearing.  Exhibits 34 and 37.  Remittitur issued on January 20, 2005.  On remand, petitioner entered into a sentencing agreement, where he agreed to two consecutive life sentences with the possibility of parole.  Exhibits 41 and 42.  Petitioner also waived his right to appeal the re-sentencing.  *Id.*  The state district court sentenced him to two consecutive life sentences with parole eligibility in twenty years.  Exhibit 42.  A second amended judgment of conviction was entered on April 14, 2005.  Exhibit 43.

Petitioner filed a state habeas corpus petition on August 22, 2005.  Exhibit 44.  Petitioner then filed an amended petition, and finally a second amended petition with the state district court, alleging seven grounds for relief, many of which contained numerous subparts.  Exhibits 52 and 55.  The state district court denied the petition without holding an evidentiary hearing.  Exhibit 67.  On appeal the Nevada Supreme Court affirmed the lower court's denial of the petition.  Exhibit 69.  Remittitur issued on March 13, 2008.  Petitioner then filed a second habeas petition directly with the Nevada Supreme Court.  Exhibit 72.  The Nevada Supreme Court denied this petition without addressing the merits of the petition.  Exhibit 73.

Petitioner mailed the instant federal petition on February 21, 2008 (ECF No. 6).  Respondents moved to dismiss the petition, arguing some of the grounds contained in the petition were unexhausted and some were procedurally defaulted (ECF No. 14).  Petitioner opposed the motion to dismiss (ECF No. 15).  Thereafter, the Court found that grounds nine and ten were unexhausted and that ground one, subclaims nineteen through twenty-two, and ground five were procedurally defaulted (ECF No. 17).  On petitioner's motion to reconsider, equitably toll, stay or remand (ECF No. 19), the Court denied reconsideration but stayed the proceedings to permit petitioner to return to state court to exhaust his unexhausted claims (ECF No. 22).

1    The matter was reopened on August 1, 2011, and respondents have now filed their

2    Answer, including any affirmative defenses that may apply (ECF No. 30). Petitioner has replied

3    (ECF No. 34).  In addition, respondents move to substitute parties to identify the current warden,

4    Renee Baker, as a respondent in place of E.K. McDaniel, who is no longer warden of Ely State

5    Prison.  Petitioner moves under Fed. R. Civ. P. 60(b) for reconsideration of the dismissal of his

6    procedurally defaulted grounds (ECF No. 32).  Respondents have opposed this motion.

7    **II.    Miscellaneous Motions**

8        **A.    Motion for Relief From Judgement or Order**

9    Petitioner submits a second motion for reconsideration of the Court's determination

10   that ground 1, subparts 19-22 are procedurally defaulted (ECF No. 32), contending that he was

11   denied the opportunity to file a response to the state's motion to dismiss particular grounds of his

12   second amended state post-conviction petition, as required by NRS 34.750(4).[2]  The motion is

13   opposed.

14   The order denying petitioner relief on his post-conviction petition was dated August

15   17, 2006, eight days after the State dated its Answer, Motion to Dismiss and Motion for Sanctions on

16   August 8, 2006.[3]  Petitioner informs the Court that he had filed a motion for enlargement of time to

17   respond, seeking an additional sixty days, received no order granting same, but assumed the motion

18   was granted.  Petitioner asserts that the state court's failure to follow the mandatory language of NRS

19   34.810(4) violated his constitutional rights to due process and equal protection.

20   The statute which addresses matters in state post-conviction proceedings such as the

21   appointment of counsel, the pleadings allowed and the timing therefore provides in pertinent part:

22       4.  The petitioner shall respond within 15 days after service to a
         motion by the State to dismiss the action.

23

---

24   [2] In fact, the document filed by the state in response to the petition was entitled, "Answer, Motion
     to Dismiss and Motion for Sanctions."  A partial copy of this document, excluding the title page was
25   submitted by respondents as Exhibit 66.  A complete copy of the brief was submitted by petitioner as
     an exhibit to his brief in support of the petition.  It is found at ECF Nos. 4-6.

26

     [3] The state court's filed date is illegible on both documents.

NRS 34.750(4).   However, a violation of state law does not necessarily result in a federal constitutional violation, petitioner's citation to federal case law notwithstanding. *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 1258 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.") Only when the state law error is so prejudicial that it renders the defendant's trial fundamentally unfair does a due process violation occur. *Moore v. Borg,* 911 F.2d 738 (9th Cir.1990) (citations omitted).

Here, the petition had been on file in the state court for almost a year, giving the court ample opportunity to review the petition.  When the court received a document entitled "Answer, Motion to Dismiss and Motion for Sanctions," it apparently proceeded to expeditiously address the matter.  Petitioner's response was untimely in the extreme, being filed some two months later, without leave of the court. Moreover, the arguments presented in that opposition conceded dismissal of ground one related to prosecutorial misconduct, so long as the court found all grounds to have been previously presented on direct appeal. *See* Opposition to Answer, Motion to Dismiss, and Motion for Sanctions, pp. 3-4, found at ECF No. 3-5.  It further argues that the additional facts or grounds, if procedurally barred, should be allowed because they were not presented on direct appeal because of the oversight of appellate counsel. *Id.* at 4.  These arguments have been presented to this Court before and were found to be inadequate. *See* ECF No. 22.

In order for attorney error to constitution cause to excuse a procedural default, it must rise to the level of a Sixth Amendment violation under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984).  *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639 (1986).  Counsel's performance was found by the Nevada Supreme Court to have been adequate in this regard. *See* Order of Affirmance, Exhibit 69.  Having reviewed the appellant's brief, this Court concludes that appellate counsel was more than effective.  The brief was extensive and the claims thoroughly addressed.  In fact, counsel attempted, at petitioner's insistence, to bring a claim to the Court's attention which he did not believe was appropriate, but which petitioner insisted be included. *See* Appellant's Opening

1  Brief, p. 20, Exhibit 35.  Finally, appellate counsel won petitioner relief in the form of a

2  resentencing.

3           Petitioner's instant contention that the denial of his right to present his cause and

4  prejudice arguments on post conviction denied him due process and equal protection are

5  unpersuasive.  The violation of state law in this instance does not constitute a due process or equal

6  protection violation.   Petitioner is not entitled to reconsideration of the Court's previous

7  determination that ground 1, subparts 19-22 are procedurally barred.   The motion shall be denied

8  and no further such motions will be entertained by this Court.

9           **b.     Procedural Default - Grounds 9 and 10**

10          Respondents move to dismiss the newly exhausted grounds 9 and 10 on the basis of

11  procedural default.  Ground 9 reads:

12               Petitioner was convicted for the crime of murder. Petitioner is not
               only Legally Innocent, but actually innocent of the crime.  The
13               conviction in this case violates Petitioner's rights under the 5th, 6th,
               8th, and 14th Amendments to the United States Constitution.
14

15  Petition, p. 11B.

16          Ground 10 reads:

17               Due to bias expressed by the 5th Judicial District Court "JOHN P.
               DAVIS" Petitioner was denied his 5th, 6th and 14th Amendment
18               rights under the United States Constitution.  When he failed to
               address Petitioner's 6th Amendment Ineffective Assistance of
19               Counsel claims [sic].

20  Petition, p. 12B (as originally set forth).

21          These two claims were presented for the first time to the Nevada Supreme Court in

22  petitioner's second petition, which was filed on November 12, 2009.  The Nevada Supreme Court

23  found the claims to be untimely, successive and an abuse of the writ and rejected petitioner's cause

24  and prejudice arguments, as well as his claims of actual innocence.  *See* Supplemental Exhibit 1

25  (ECF No. 30).

26

1    **1. General Principles**

2         Generally, in order for a federal court to review a habeas corpus claim, the claim must

3    be both exhausted and not procedurally barred. *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir.

4    2003).  Procedural default occurs when a petitioner presented a claim to the state courts but the state

5    courts disposed of the claim on procedural grounds rather than denying the claim on the merits.  A

6    federal court will not review a claim for habeas corpus relief if the decision of the state court

7    regarding that claim rested on a state law ground that is independent of the federal question and

8    adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The

9    *Coleman* Court stated the effect of a procedural default as follows:

10              In all cases in which a state prisoner has defaulted his federal claims in state
               court pursuant to an independent and adequate state procedural rule, federal
11             habeas review of the claims is barred unless the prisoner can demonstrate
               cause for the default and actual prejudice as a result of the alleged violation
12             of federal law, or demonstrate that failure to consider the claims will result
               in a fundamental miscarriage of justice.
13

14   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

15             **2.  Procedural Default in the State Court**

16        As noted above, when presented with the claims, the Nevada Supreme Court rejected

17   them stating,

18             Appellant filed his petition on November 12, 2009, over four years
               after this court's January 18, 2005, issuance of the remittitur from his
19             direct appeal.  Appellant's petition was therefore untimely filed.  *See*
               NRS 34.726(1).  Appellant's petition is also successive because he
20             had previously filed a post-conviction petition for a writ of habeas
               corpus, and it constituted an abuse of the writ as he raised claims
21             new and different from those raised in his previous petition.  *See*
               NRS 34.810(1)(b)(2); NRS 34.810(2).
22

23   Supplemental Exhibit 1.

24   ,         **3. The Procedural Default Was an Independent and Adequate State Law
               Ground for the Nevada Supreme Court's Disposition of Petitioner's Claims**
25
             For the procedural default doctrine to apply, "a state rule must be clear, consistently
26
     applied, and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28

                                                    6

F.3d 1005, 1010 (9th Cir. 1994). *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996).

NRS 34.810 has been held to be an independent and adequate state procedural rule that will bar federal review. *See Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003); *Bargas v. Burns*, 179 F.3d 1207 (9th Cir. 1999). This Court finds that the Nevada Supreme Court's determination that grounds 9 and 10 were procedurally barred under NRS 34.810 was an independent and adequate ground for the court's denial of the state habeas petition.

**4. Cause and Prejudice or Fundamental Miscarriage of Justice**

To overcome a procedural default, a petitioner must establish either (1) "cause for the default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). Cause to excuse a procedural default exists if a petitioner can demonstrate that some objective factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The prejudice that is required as part of the showing of cause and prejudice to overcome a procedural default is "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998); *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

Petitioner refers the Court to his motion to reopen the case for his arguments related to cause and prejudice to overcome the procedural bar. Petitioner argues his rights were once again violated when the state court failed to permit him to reply to the answer to his 2009 post-conviction petition as required by NRS 34.760(4). The Nevada statute cited by petition and quoted previously in this Order actually allows fifteen days for a petitioner to reply to any motion filed in response to the petition. *See, supra.* An Answer is not a motion.

Petitioner argues that he fairly presented his unexhausted and procedurally defaulted

1  claims in the Extraordinary Writ filed with the Nevada Supreme Court.[4]  That petition requested the

2  Nevada Supreme Court to direct the district court to address petitioner's motion for peremptory

3  challenge to the judge on the case and to stay the post-conviction proceedings until such time as the

4  Nevada Supreme Court issued its decision on the petition.  Exhibit 58, p. 6.  The Nevada Supreme

5  Court denied the procedural relief sought.  Exhibit 59.

6       The claims presented in the extraordinary writ were not the substance of grounds 9

7  and 10 currently before this Court.  Rather, the relief sought was procedural in nature, unrelated to

8  the substance of the claims presented in the petition.  The fact that petitioner attached a copy of his

9  petition containing the claims is of no moment.  While the extraordinary petition was likely

10  "properly filed," it did not relate to the substance of the claims in his post-conviction petition and did

11  not fairly present or exhaust those claims.  *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003).[5]

12       Petitioner's argument that the denial of an opportunity to reply violates due process

13  and equal protection have already been considered and rejected in this *supra*.  Errors of state law,

14  such as those of which petitioner complains, do not necessarily violate the constitution. *Moore v.*

15  *Borg,* 911 at 738.  In this instance the denial was not a violation of state law nor a denial of due

16  process.

17       Finally, petitioner asserts that the unwarranted bars which prevent him from proving

18  his innocence are sufficient prejudice to overcome those bars.  This circular argument also fails.

19  While the procedural requirements imposed by both the state and federal statutes result in a

20

21       [4] Petitioner leaves a blank in his brief where the date the petition was filed should go.  The Court

22  assumes petitioner is referring to the petition for writ of mandamus filed with the Nevada Supreme Court
   on March 10, 2006, which is Exhibit 58 provided by respondents.

23       [5] Submitting a new claim to the state's highest court in a procedural context in which its merits

24  will not be considered absent special circumstances does not constitute fair presentation.  *Castille v.*
   *Peoples*, 489 U.S. 346, 351 (1989); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).  And under

25  Nevada case law, the presentation of issues to the Nevada Supreme Court which have not previously
   been raised to the trial court precludes the supreme court's consideration of the merits of that claim.

26  *Phillips v. State*, 105 Nev. 631, 634,  782 P.2d 381, 383 (1989) citing, *A Minor v. State*, 85 Nev. 323,
   325, 454 P.2d 895, 896 (1969).

1   limitation of the opportunities for and the breadth of the types of claims to be raised by a petitioner,

2   these limitations are not the type of prejudice the petitioner must show.   Rather, he must show that

3   he suffered prejudice as a result of the violations of federal law he asserts in his petition. *Coleman*,

4   501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. at 485.   The merits of the claims raised in

5   ground one, incorporated by reference into ground nine, have been considered and rejected by the

6   state court on the merits and by this Court in its previous review of the procedural default of subparts

7   19 through 22 of ground 1.

8           Finally any contention that he is actually innocent is unsupported by evidence. A

9   petitioner can meet the fundamental miscarriage of justice standard when he shows "actual

10  innocence," or presents new evidence to the court which raises a doubt sufficient "to undermine

11  confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. 298, 317 (1995).  Under *Schlup*,

12  actual innocence is established when, in light of all of the evidence, "it is more likely than not that no

13  reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623

14  (1998) (quoting *Schlup*, 513 U.S. at 327-28).  The petitioner must establish his factual innocence of

15  the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir.

16  2003).  Moreover, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his

17  allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific

18  evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at

19  trial." *Schlup*, 513 U.S. at 324; *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

20          Petitioner's actual innocence claim does not include new evidence which raises a

21  doubt sufficient to undermine the confidence of the result of the trial.  Petitioner has not shown that

22  he is factually innocent of the crime, or that there is some new reliable evidence that was not

23  presented at trial that would have changed the outcome of the trial.  Instead, petitioner presents

24  speculation and opinion as to the validity of the evidence that was presented at trial.  Petitioner has

25  failed to show cause and prejudice to overcome the procedural default as to grounds nine and ten of

26  this petition.  These two grounds must be dismissed as procedurally barred.

**III.    Merits Discussion**

       **A.    Legal Standard**

       28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

(AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim --
>
>      (1)    resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
>      (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  These standards of review "reflect the ... general requirement that federal

courts not disturb state court determinations unless the state court has failed to follow the law as

explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999).  Therefore,

this Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists

could disagree that the state court's decision conflicts with [Supreme Court] precedents."

*Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

       A state court decision is contrary to clearly established Supreme Court precedent,

within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the

governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003)

(*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694

(2002).

       A state court decision is an unreasonable application of clearly established Supreme

Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

1    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

2    principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at

3    413). The "unreasonable application" clause requires the state court decision to be more than

4    incorrect or erroneous; the state court's application of clearly established law must be objectively

5    unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

6          In determining whether a state court decision is contrary to federal law, this Court

7    looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

8    (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944

9    (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to

10   be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

11   clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

12          <u>Ground One, subparts 1-13</u>

13          Petitioner alleges prosecutorial misconduct during trial that violated his Fifth and

14   Fourteenth Amendment rights. Subparts 1 through 13 identify instances where the prosecutor is

15   alleged to have elicited improper testimony about petitioner's prior incarcerations, detentions, or

16   probation status.

17          Respondents liken these contentions to the issue of improper shackling, citing *Cox v.*

18   *Ayers,* 613 F.3d 883 (9th Cir. 2010), and argue that "even if this court determines that a few vague

19   references to Jernigan being in custody (at some point in time) amounts to 'shackling,' there is

20   simply no prejudice." Answer, p. 16.

21          As an aside, the Court notes that the references to petitioner's custody status were not

22   vague and exceed its definition of "few" by some ten or eleven references. However, it is the

23   fairness of the trial overall, not the culpability of the prosecutor, that guides the due process analysis

24   of this claim. *Smith v. Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982).

25          Even in cases of egregious prosecutorial misconduct, such as the knowing
     use of perjured testimony, we have required a new trial only when the
26          tainted evidence was material to the case. *See Giglio v. United States*, 405
     U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v.*

11

*Illinois*, 360 U.S. 264, 272, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959). This materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.

*Id.* n. 10. Thus, the Court must determine if the prosecutor's actions in eliciting testimony about petitioner's custody status had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1722 (1992). That is the same analysis done by the Nevada Supreme Court in its review of these claims. *See* Exhibit 37, pp. 11-12. Thus, it appears that the Nevada Supreme Court applied the correct federal legal standard.

This Court's review of the evidence submitted at trial also supports the Nevada Supreme Court's factual review. For example, the testimony from the prison guard, Daniel Smith, related to petitioner's comments that he had unfinished business in Mina, could only be made relevant to the crime if brought into context - when and why the statement was made. That context was petitioner's conversation with a prison guard about his imminent release from custody and his plans for the future. The prosecutor's inquiry into the circumstances was not improper. Other instances of which petitioner complains include statements elicited during his own testimony when he was asked about his criminal history and background by the prosecutor on cross-examination. It is noted that, under Nevada and federal law, the prosecutor is permitted to impeach a defendant's testimony by revealing his prior felony convictions. NRS 50.095(1); *Luce v. U.S.,* 469 U.S. 38, 41, 105 S.Ct. 460, 463 1984.

Having reviewed the evidence given at trial, this Court concludes that the instances of prosecutorial misconduct regarding petitioner's criminal history and custody status were numerous, but were not sufficient to result in a "substantial and injurious effect or influence in determining the jury's verdict," where the evidence of guilt was strong. *Brecht,* 507 U.S. at 637.

Ground One, Subparts 14-18

Petitioner also complains that the prosecutor elicited testimony constituting  improper character evidence related to his failure to care for his daughter, his unemployment, his use of illegal

12

1    drugs, his Swastika tattoos and his invocation of the right to remain silent.  Neither party addresses

2    these particular allegations in their briefing.

3           Under Federal Rule of Evidence 404(a)(1), character evidence is admissible when

4    offered by the prosecution to rebut "[e]vidence of a pertinent trait of character offered by an

5    accused."   It is not admissible, however, when the accused has not offered character evidence to

6    support his innocence.  *Id.*

7           In this instance, the prosecutor's references and inquiries about petitioner's character

8    as evidenced by his tattoos, his drug use or his work and parenting history were improper and made

9    solely to impugn petitioner's character before the jury.  Petitioner's direct testimony did not call any

10   of those issues into question.  However, applying the highly deferential standard of the AEDPA, this

11   Court concludes that the prosecutor's questioning did not result in a violation of due process because

12   the questioning did not have a substantial and injurious effect on the jury's verdict in light of the

13   other evidence presented, as held by the Nevada Supreme Court.

14          <u>Ground Two</u>

15          Ground two alleges ineffective assistance of counsel at trial based upon counsel's

16   failure to object to instances of prosecutorial misconduct and counsel's failure to investigate, object

17   to, or test "manufactured evidence presented by the prosecution."

18          To establish ineffective assistance of counsel "a defendant must show both deficient

19   performance by counsel and prejudice." *Premo v. Moore*  131 S.Ct. 733, 739 (U.S., 2011) quoting

20   *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1419 (2009).  "To establish deficient

21   performance, a person challenging a conviction must show that 'counsel's representation fell below

22   an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S.668, 688, 104 S.Ct.

23   2052 (1984). A court considering a claim of ineffective assistance must apply a "strong

24   presumption" that counsel's representation was within the "wide range" of reasonable professional

25   assistance.  *Id.*, at 689. The challenger's burden is to show "that counsel made errors so serious that

26   counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

13

1   *Id.*, at 687.  "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that,

2   but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.*

3   The question is whether an attorney's representation amounted to incompetence under 'prevailing

4   professional norms,' not whether it deviated from best practices or most common custom. *Id.* at 690.

5           Counsel's failure to object to each instance of improper reference to petitioner's

6   detention status or to other improper questioning was not ineffective assistance, where counsel's

7   decision to object is generally strategic in nature.   A review of the transcripts shows that counsel did

8   object to various improper questions posed by the prosecutor, particularly on cross-examination of

9   petitioner.  There, the prosecutor asked improper questions of defense witnesses and petitioner

10  himself which brought out petitioner's purported drug use and tattoos.  Exhibit 30-B, pp. 907, *et seq.*

11  While this testimony was irrelevant or unwarranted by the previous testimony, the court upheld some

12  of the objections, but overruled several of them.  Based on the outcome of the objections, counsel

13  may have reasonably determined his objections were more likely to emphasize the testimony than

14  eliminate it's harmful effects.

15          The Nevada Supreme Court reviewed petitioner's claims that counsel was ineffective

16  in this regard and found against petitioner by determining that the prosecutor's actions were harmless

17  in light of the strong evidence.  The court concluded that petitioner could not demonstrate the

18  requisite prejudice given the strong evidence in the case.  Exhibit 69, p. 9.

19          Petitioner may not obtain relief from this Court on his claims unless he can show that

20  the state court's decision was objectively unreasonable in determining the facts based on the

21  evidence before it or resulted from an objectively unreasonable application of clearly established

22  federal law.  28 U.S.C. § 2254(d).  Petitioner has not been successful in this regard.  The references

23  to petitioner's detention status were, for the majority, brought out properly to put relevant evidence

24  into context or to impeach the truthfulness of petitioner's own testimony, as is allowed by law.

25  Counsel would not properly object to those instances.  In those instances where an objection would

26  have been proper, but was not offered, the balance and strength of the evidence presented prevents

14

the Court from concluding that counsel's performance prejudiced petitioner.  The outcome of the trial did not balance on the weight of counsel's missed objections.  No relief is warranted as to ground two.

<u>Ground Three</u>

In this ground for relief, petitioner claims his trial counsel was ineffective for (1) failing to file a motion to suppress petitioner's statements made to his probation officer; (2) failing to retain experts or investigators to compel or rebut witness testimony and to challenge other evidence; (3) failing to object to autopsy photos; (4) failing to consult with petitioner about appeal rights; (5) failing to request a lesser included jury instruction; (6) failing to obtain surveillance tapes; (7) failing to conduct pretrial investigation of petitioner's theory of defense; (8) failing to assist petitioner in his pretrial petition for writ of habeas corpus; (9) waiving petitioner's right to a speedy trial; (11)[6] failing to object when petitioner was not sentenced by the jury; (12) failing to seek a *Petrocelli* hearing on the prosecutions' admission of uncharged bad acts evidence; (13) not requesting that the jury visit the crime scene; (14) not adequately preparing for examination of witnesses; (15) failing to move for a change of venue; (16) failing to engage an investigator to develop evidence of another possible suspect; (17) failing to secure testimony from Sam Robert Johnson; and, (18) failing to move for a mistrial when petitioner was seen by th jury being escorted into the courtroom by three guards.

Respondents rely exclusively on the decision of the Nevada Supreme Court in countering these allegations.  In his reply, petitioner suggests that the Nevada Supreme Court's decision was not based on full consideration of the merits because his opposition to the state's response to the petition was not filed in time to be considered by before the trial court.  In addition, petitioner concedes that subparts 2(F) and 2(G) lack merit.

**Subpart 1**

Petitioner claims counsel failed to file a motion to suppress petitioner's statements

---

[6] Petitioner omits subpart 10 from this claim.

made to his probation officer under threat of parole revocation in violation of *Miranda*.[7]  As noted by the Nevada Supreme Court, counsel made a verbal motion to suppress petitioner's statement, but that motion was unsuccessful.  In his briefing, petitioner has not shown that a written motion would have been successful where the oral motion was not.  Petitioner was not actually in custody at the time he made the statements to his parole officer and suggestions that his parole might be revoked if he did not speak willingly with the police officers was not the equivalent of being under arrest, as that term is defined by *Miranda*.  Threats of detention are not detention. Petitioner has not demonstrated that counsel's performance was sub-par or that he was prejudiced by the lack of a written motion.

**Subpart 2(a)-(e) and (g)**

Here, petitioner contends that counsel could have used experts or investigators to compel the testimony of witnesses at trial.  Petitioner admits that he and counsel knew of the witnesses' whereabouts and he presents what he contends would have been their testimony.  However, he does not explain how an investigator would have been able to "compel" their testimony or demonstrate that their testimony might have changed the outcome of trial.  Moreover, while petitioner speculates as to what their testimony might have been, he presents no affidavits or statements from those witnesses to support his speculations.

Petitioner also argues that counsel admitted that he waited until the first day of trial to subpoena "key witnesses," and that he only subpoenaed some of them.  As the Nevada Supreme Court stated in denying relief on this claim, petitioner "did not assert that the subpoenaed witnesses failed to appear to testify at trial" or that the "testimony of individuals that were not subpoenaed would have resulted in a different outcome at trial."  Exhibit 69, p. 4.  As a result, the timing of the subpoenas makes no difference.  Petitioner has failed to demonstrate that counsel was ineffective in this regard.

**Subpart 2(f), (h) and (i)**

These subclaims argue that counsel should have challenged evidence presented by the

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

prosecution, arguing that the blood on the boots had been "salted" by the prosecution, that the pants should have been suppressed where the blood evidence was not tied by DNA to any individual, and that an investigator could have uncovered evidence to prove that witnesses Kimberly Jackson (petitioner's sister) and Sylvia Brown had given perjured testimony or had received a benefit from the state in exchange for their testimony.

In his reply, petitioner concedes the meritless nature of these claims. Admitting that it was unlikely that the blood on the boots was "salted," that the pants were actually damaging to his case or that counsel could have proved that the witnesses received "payment" for their testimony. Subpart 2 of this ground three is without merit.

### Subpart 3

Petitioner argues that the autopsy photos were only admitted to inflame the jury because they offered nothing by way of proof as to how the victim died. He argues that counsel should have objected to the admission of the photos. In denying this claim, the Nevada Supreme Court noted that there was no prejudice derived from counsel's decision not to object to the photos, where such an objection would be fruitless. Exhibit 69, p. 6. The photos offered evidence of the force used by petitioner when he struck the victim in the head and the seriousness of the injury suggests that petitioner was strong enough and angry enough to have committed the killing. Petitioner offers nothing here to refute that conclusion.

### Subpart 4

Petitioner argues that counsel was ineffective for failing to file a notice of appeal. He argues that the fact that the appeal proceeded and was effective in having his case remanded for a new sentencing demonstrates the prejudice suffered.

Where a party has obtained relief on an appeal whether the notice was filed by counsel or not, it is impossible to find prejudice arising from counsel's failure to file the appeal notice. No relief is warranted on this claim.

17

**Subpart 5**

Petitioner contends counsel was ineffective for failing to request a jury instruction on second degree murder.  This claim was rejected by the Nevada Supreme Court when it determined that such an instruction had, in fact, been given.  Exhibit 25, Jury Instruction 20.

**Subpart 6**

Petitioner argues that counsel should have obtained and presented the surveillance tapes from the Gas Shop where Dawn Ahart testified that petitioner had admitted to killing the victim and had given a thumbs up signal to confirm that fact.  Petitioner argues the tapes would have impeached the testimony of Ms. Ahart.  He further suggests that a professional "lip reader" could have confirmed the falsity of Ahart's testimony.

This claim was rejected by the Nevada court because it found that Ahart's testimony was consistent with the testimony of other witnesses at trial, including petitioner's own and because petitioner had not shown that the result of the trial would have been different had Ahart's testimony been impeached.  Exhibit 69, pp. 7-8.  This Court agrees, particularly given the other strong evidence supporting petitioner's guilt, including testimony of Sylvia Brown who testified that petitioner had told her he killed Knight with a machete.  Exhibit 30, Trial Transcript, page 776.

**Subpart 7**

This subpart contends counsel was ineffective for failing to investigate petitioner's theory of defense - that someone else killed Mr. Knight. This claim was rejected by the Nevada Supreme Court noting that counsel had presented evidence that a palm print found in the bathroom where the killing occurred did not belong to petitioner and that the amount of blood found on petitioner was inconsistent with someone involved in such a bloody killing.  Exhibit 69, p. 4.  In denying relief, the court pointed out that the petitioner had not specified what investigation counsel should have conducted which would have resulted in a different outcome at trial.  *Id.*

In his reply, petitioner further contends that given the significant blood at the scene and the minimal blood found on petitioner's clothing, counsel could have asked for DNA testing of

18

the inside of the victim's pockets, which had been turned inside out presumably by the killer.  This contention is an untimely attempt to address the Nevada Supreme Court's finding.  Moreover, the suggestion that the perpetrator's DNA was available from the inside of the victim's pocket is highly speculative, and even if such an investigation were conducted, there is nothing to suggest that it would have been sufficient to change the outcome of the trial.  Petitioner has not demonstrated that counsel was ineffective in this regard.

**Subpart 8**

Here, petitioner argues that counsel was ineffective when he declined to assist petitioner in filing an appeal from the denial of his pre-trial habeas corpus petition, advising petitioner to proceed in pro se despite counsel's familiarity with court rules refusing filings from represented petitioners.

Petitioner fails to indicate how he was prejudiced by counsel's actions in light of the fact that the pretrial habeas petition was not an appealable order.  Nevada Revised Statutes (NRS) 177.015(3); *Castillo v. State,* 106 Nev. 349, 792 P.2d 1133 (1990).  Counsel was not ineffective in this regard.

**Subpart 9**

Petitioner argues that counsel improperly advised him to waive his right to a speedy trial to permit counsel more time to prepare.  This claim was denied by the Nevada Supreme Court which recognized that petitioner's filing of the pretrial habeas petition acted as a waiver of a speedy trial, thereby mooting this claim.  This Court concurs.

**Subpart 11[8]**

In subpart 11, petitioner complains that counsel failed to object when petitioner was not sentenced by the jury.  This claim was addressed and remedied by the Nevada Supreme Court in petitioner's original appeal.  *See* Exhibit 37.  Petitioner cannot demonstrate any remaining prejudice from counsel's purported failure and this claim shall be denied as moot.

---

[8] As previously noted, petitioner did not present a subpart 10 to this ground for relief.

1

**Subpart 12**

2          Petitioner complains that counsel failed to request a *Petrocelli*[9] hearing before

3   evidence of "numerous bad character claims" were presented by the prosecution.  A review of the

4   trial transcript demonstrates that counsel did object to these references coming into evidence in the

5   absence of a  *Petrocelli* hearing.  *See e.g.,* Exhibit 30A, Trial Transcript pp. 913-914. The objection

6   was overruled. *Id.*  The Nevada Supreme Court recognized these instances and found that counsel

7   was not ineffective and the failure to conduct such a hearing was harmless error.  Exhibit 69, p. 10.

8   The Nevada Supreme Court's determination is not unreasonable under 28 U.S.C. § 2254(b).

9

**Subpart 13**

10          Petitioner next claims that counsel failed to request that the jury review the crime

11   scene.  He offers nothing in his petition to explain how such a review would have altered the

12   outcome of the trial.  Thus, he has failed to show the requisite prejudice.

13

**Subpart 14**

14          This subpart contends that counsel was inadequately prepared to cross examine the

15   State's witnesses or directly examined witnesses for the defense.  Again, this is a bald assertion in

16   the petition. In his reply, petitioner expands his claim to suggest that counsel asked questions that he

17   did not know the answer to in violation of a basic principal of trial practice.  He offers no specifics,

18   rendering this claim void of any showing of prejudice.

19

**Subpart 15**

20          Here, petitioner argues that counsel should have moved for a change of venue after

21   substantial pretrial publicity.  The Nevada Supreme Court rejected this claim in the absence of any

22   showing that the jury was prejudiced against him.  Exhibit 69, pp. 2-3. *Murphy v. Florida,* 421 U.S.

23   794, 799, 95 S.Ct. 2031 (1975) ("Where jurors are exposed to information about the defendant's

24   prior convictions or to news reports about the crime he is accused of committing, no presumption of

25   prejudice arises"). Petitioner has failed to show that such a motion would have been successful or

26   _____

          [9] *Petrocelli v. State,* 101 Nev. 46, 692 P.2d 503 (1985).

that a change of venue was actually warranted.  No relief shall be granted on this claim.

**Subpart 16**

Next, petitioner claims that counsel failed to hire an investigator to pursue evidence of another possible suspect.  In rejecting this claim, the state court noted that petitioner had not demonstrated that any additional investigation into such things as the noises and movement heard coming from the room after petitioner had purportedly departed or into the unidentified palm print on the bathroom wall would have resulted in a different outcome at trial.  The claim is rejected.

**Subpart 17**

Petitioner argues that counsel was ineffective for not retaining an investigator to secure testimony from a witness who could testify about the victim's propensity for violence.

Where the petitioner's theory of defense was that someone else killed Mr. Knight, evidence of the victim's character would have been irrelevant and counsel could have determined that expending effort to locate such a witness would be poor trial strategy.  The state court held that petitioner could not show prejudice from this omission and denied the claim.  The state court's decision was not wrong.

**Subpart 18**

The final claim of this ground for relief contends that counsel was ineffective for failing to move for a mistrial when the jury was allowed to observe the petitioner being escorted into the courtroom by three officers.  He contends this is equivalent to being viewed in handcuffs. Although petitioner contends the prejudice derived from being surrounded by guards is plain, the trial court and the Nevada Supreme Court disagreed with him.

A criminal defendant has the right, absent particular circumstances, to appear before the jury with the appearance of an innocent person. *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691 (1976).  Sitting at trial in shackles would be a clear violation of that right.  However, Nevada law and due process permits an officer escort into the courtoom or other necessary efforts to maintain security in the court.  *See id.; see also Elvik v. State,* 114 Nev. 883, 889, 965 P.2d 281, 285 (1998).  Petitioner

1    does not contend that he was shacked or restrained during the escort.

2    Ground three of the instant petition lacks merit.  Petitioner has failed to demonstrate

3    to this Court that the decision of the Nevada Supreme Court was objectively unreasonable either in

4    the application of clearly established federal law or in determination of the facts in evidence.

5    <u>Ground 4</u>

6    Ground four of the petition claims that petitioner was denied due process and a fair

7    trial when bad acts evidence was "repeatedly admitted over objections of Petitioner."

8    Unduly prejudicial evidence or circumstances at trial can deny a criminal defendant

9    due process and the presumption of innocence. *Estelle v. Williams,* 426 U.S. at 503, 96 S.Ct. 1692-

10   93.  Courts must be cognizant of factors that may undermine the fairness of the process. *Id.*

11   However, only if, "in light of the record as a whole," the improper references or evidence were

12   sufficient to have a significantly negatively impact upon the jury's perception of the defendant has

13   the trial been unfair in violation of the guarantees of due process. *See Brecht v. Abrahamson,*507

14   U.S. at 637, 113 S.Ct. at 1722.  If, as petitioner contends, the repeated references to his custody

15   status and to negative characteristics of his lifestyle or personality had a substantial and injurious

16   effect on the jury's verdict, then it cannot be said that such references were harmless. *See also,*

17   *Valerio v. Crawford,* 306 F.3d 742, 762 (9th Cir. 2002).

18   This claim was reviewed by the Nevada Supreme Court on direct appeal.  The court

19   recognized that some of the comments or evidence to which petitioner objected had been improperly

20   admitted.  Exhibit 37, pp. 8-9.  The state court concluded that the trial court erred in not conducted

21   the *Petrocelli* hearing and in admitting evidence related to petitioner's drug use, his drug dealing, his

22   tattoos and the facts relevant to his child and who was supporting her without a contemporaneous

23   limiting instruction to the jury.  The court pointed out that such evidence was irrelevant and

24   presented a risk of unfair prejudice which substantially outweighed any probative value it may have

25   had. *Id.* The court recognized, however, that the errors were subject to the harmless error analysis

26   required by *Brecht*.  The court stated:

1
2
3
4
5
6
7
8
9
10
11
12
13

     Here, the State wrongly introduced evidence of Jernigan's drug use and drug dealing, his swastika tattoos and his inability to support his daughter.  However, overwhelming evidence supports the verdict, and these items of evidence are relatively innocuous in comparison to the strong, direct evidence concerning Jernigan's commission of the crime itself.  Therefore, we conclude that the admission of this evidence constitutes harmless error, and is not error of a constitutional dimension.  The record reveals strong, ample and non-circumstantial evidence against Jernigan.  Sylvia Brown testified that, the night of the murder, when Jernigan learned Knight was in town, he told Brown that he should beat up that "old man" and then steered Brown toward Knight's motel room.  Brown testified that she fled the motel room when Jernigan started punching Knight.  She testified that, ten minutes after she returned home that night, Jernigan arrived and told her that he slit Knight's throat with a machete and instructed her to say that he had walked her home. Dawn Marie Ahart, a clerk at the Gas Store and an old acquaintance of Jernigan's, testified that Jernigan told her that he had killed Knight.  Jernigan's sister testified that, when she came home on the evening Jernigan had gone to Knight's room, Jernigan was in his boxer shorts, the dryer was running and Jernigan said that he had washed his jeans because he was going to Fallon the next day.  Forensic evidence revealed blood in Jernigan's boots.  The DNA matched Knight's DNA.

14   Exhibit 37, pp. 10-11.   This analysis of the properly admissible evidence presented at trial is

15   objectively reasonable.  The legal analysis is not contrary to or an objectively unreasonable

16   application of clearly established federal law.  This Court is foreclosed from offering petitioner any

17   relief on the basis of this claim.

18                  Ground Six

19        Ground six claims that petitioner's appellate counsel was ineffective for failing to

20   raise the claims presented in ground one - prosecutorial misconduct; ground five – district court error

21   in denying pretrial habeas petition; ground seven – refusal of state supreme court to entertain claims

22   of ineffective assistance of trial counsel on direct appeal; and eight – cumulative error.

23        Effective assistance of appellate counsel is guaranteed by the Due Process Clause of

24   the Fourteenth Amendment.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

25   assistance of appellate counsel are reviewed according to *Strickland's* two-pronged test.  *Miller v.*

26   *Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th

1    Cir.1986); *See, also, Penson v. Ohio*, 488 U.S. 75 (1988) (holding that where a defendant has been

2    actually or constructively denied the assistance of appellate counsel altogether, the *Strickland*

3    standard does not apply and prejudice is presumed; the implication is that S*trickland* does apply

4    where counsel is present but ineffective).  Thus, petitioner must show that his appellate counsel's

5    performance was objectively unreasonable in failing to identify and bring the claim and that there

6    was a reasonable probability that, but for counsel's unreasonable failure, he would have prevailed on

7    his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

8           The claim was denied by the state court on its conclusion that petitioner was unable to

9    show that any of the claims had a "reasonable probability of success on appeal."  Exhibit 69, pp. 12-

10   14.  The record supports the Nevada Supreme Court's determination as  objectively reasonable in its

11   analysis of both the facts of the case and the federal law applicable thereto.

12          Ground Seven

13          This ground contends that the Nevada Supreme Court violated petitioner's Sixth

14   Amendment rights when it refused to entertain petitioner's ineffective assistance of counsel claims

15   on direct appeal.  He suggests that the inability to bring these claims in the first instance without the

16   assistance of counsel, as is common in post-conviction review, violated his right to counsel.

17   Petitioner further argues that the Nevada Supreme Court failed to follow their own standards for

18   review as set out in *Archanian v. State,* 122 Nev. 1019, 1036, 195 P.3d 1008 (2006), which confirms

19   that "meaningful and effective appellate review is dependent upon the availability of an accurate

20   record...."  *Id.* at 1033.  Petitioner argues that the hearing on his pre-trial motion to relieve counsel

21   provided sufficient record of counsel's performance and effectiveness, allowing review on direct

22   appeal.

23          The *Archanian* standard provides a rational basis for the Nevada courts and

24   legislature's decision to review claims of effective assistance of counsel at the post-conviction stage

25   where direct appeal counsel is frequently the same as trial counsel and where the record is inadequate

26   to suggest the reasoning or circumstances informing trial counsel's efforts at trial.  Neither party is

24

able to cite and the Court has not uncovered any clearly established federal law mandating a right to

counsel to hear claims of ineffective assistance.  Thus, in the absence of a showing that the state

court decided the claim in violation of clearly established federal law, no relief under 28 U.S.C. §

2254 is available to petitioner.

<u>Ground Eight</u>

This is a claim of cumulative error based on the purported errors of counsel and the

prosecutor, which was reviewed by the Nevada Supreme Court and denied.  *See* Exhibit 69, pp. 14-

15.

In *Parle v. Runnels,* 505 F.3d 922, 927 (9th Cir. 2007) the Ninth Circuit said,

> The cumulative effect of multiple errors can violate due process even
> where no single error rises to the level of a constitutional violation or
> would independently warrant reversal. *Chambers,* 410 U.S. at 290, n.
> 3, 93 S.Ct. 1038. [fn6: omitted.]
>
> Under traditional due process principles, cumulative error warrants
> habeas relief only where the errors have "so infected the trial with
> unfairness as to make the resulting conviction a denial of due process."
> *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40
> L.Ed.2d 431 (1974). Such "infection" occurs where the combined effect
> of the errors had a "substantial and injurious effect or influence on the
> jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (internal
> quotations omitted); *see also Thomas,* 273 F.3d at 1179-81 (noting
> similarity between *Donnelly* and *Brech*t standards and concluding that
> "a *Donnelly* violation necessarily meets the requirements of *Brecht* ").
> In simpler terms, where the combined effect of individually harmless
> errors renders a criminal defense "far less persuasive than it might
> [otherwise] have been," the resulting conviction violates due process.
> *See Chambers*, 410 U.S. at 294, 302-03, 93 S.Ct. 1038.

*Parle v. Runnels,* 505 F.3d at 927.

Having previously determined that the various errors of counsel and the prosecutor

did not present a substantial and injurious effect or influence on the jury's verdict, this court concurs

with the Nevada Supreme Court and denies relief on the basis of cumulative error.

**III.    Conclusion**

The Court has reviewed and considered the claims and arguments presented by the

parties and finds that the petition must be denied.  The second motion to reconsider the dismissal of

25

grounds 1, subparts 19-22 and ground five is unpersuasive.  Grounds 9 and 10 were procedurally defaulted by petitioner's failure to present them to the state courts in his original actions.  His attempts to overcome the bar fail.  Thus grounds nine and ten will be dismissed with prejudice.

Finally, the Court finds that petitioner has failed to demonstrate that the state courts' handling of any of his claims resulted in an objectively unreasonable application of clearly established federal law or on objectively unreasonable determination of the facts in light of the evidence presented at trial.

In order to proceed with an appeal from this Court, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that ground 1, subparts 14-18 and ground 4 meet that standard where jurists of reason could find this court's assessment debatable.  Accordingly, the Court will grant petitioner a certificate of appealability as to those grounds only.

26

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1.      The Motion for Relief from Judgment (ECF No. 32) is **DENIED.**

2.      Grounds Nine and Ten of the petitioner are **DISMISSED WITH PREJUDICE** as procedurally barred.

3.      All surviving grounds of the petition is **DENIED**.

4.      A Certificate of Appealability shall issue as to ground 1, subparts 14-18 and ground 4.

The Clerk shall enter judgment accordingly.


DATED this 31st day of January 2012.


_Edward C. Reed._
UNITED STATES DISTRICT JUDGE